**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2777-20

JOAN MARIE GRANATO and
NEW JERSEY ADULT MEDICAL
DAY CARE, INC.,

     Plaintiffs-Respondents,

v.

ALEX KRUTYANSKY, NEW
JERSEY ADULT MEDICAL DAY
CARE CENTER II, INC., and NEW
JERSEY ADULT MEDICAL DAY
CARE CENTER III, INC.,

     Defendants-Appellants.

_____

Argued May 19, 2022 – Decided June 20, 2022

Before Judges Haas and Alvarez.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000286-19.

Saadia Shapiro (Shapiro & Associates, PLLC) of the New York bar, admitted pro hac vice, argued the cause for appellants (Shapiro & Associates, PLLC, attorneys; Miro Lati, Saadia Shapiro, David Podell, and David

Szalyga (Shapiro & Associates, PLLC) of the New York bar, admitted pro hac vice, on the briefs).

Brian M. Block argued the cause for respondents (Mandelbaum Barrett, PC, attorneys; Raj Gadhok, of counsel and on the brief; Brian M. Block, on the brief).

PER CURIAM

Defendant Alex Krutyansky appeals from a final judgment and a subsequent award of counsel fees to plaintiff Joan Marie Granato after a two-day bench trial. The judge determined that Krutyansky had no ownership or other beneficial interest in New Jersey Adult Medical Day Care, Inc. (NJAMDC), a business exclusively owned by Granato. For the reasons stated in the thorough, cogent, and thoughtful decisions rendered by the Honorable James J. DeLuca, J.S.C., we affirm. We add the following comments.

Judge DeLuca issued several written opinions, including a June 29, 2020 decision that Krutyansky could not own an interest in NJAMDC because he had not complied with the adult day care center regulatory scheme. The final judgment relied on the earlier decision that Krutyansky had no ownership interest in NJAMDC because he did not submit to the licensure process found in N.J.A.C. 8:43F-2.12, N.J.A.C. 8:43F-2.11, and N.J.A.C. 8:43F-6.3, which included undergoing a criminal background check. It also restrained Krutyansky

from using names similar to NJAMDC's or otherwise interfering with Granato's conduct of the business.

The parties' dispute began in 2013, when Granato attempted to transfer an ownership interest to Krutyansky, contingent upon his compliance with the licensure requirements. That effort failed because Krutyansky would not submit to a background check. The parties subsequently had disagreements, including one over Krutyansky's unauthorized withdrawal of funds from the business, and entered into a mediation agreement in 2017. The mediation agreement provided that if NJAMDC was not sold by January 1, 2019, the parties could reinstate the litigation. When the business did not sell, Krutyansky filed suit in the Law Division. Granato filed suit in Chancery, and the matters were consolidated for decision leading to the orders now being appealed.

Krutyansky raises the following points:[1]

---

[1] Although the order awarding $8,480.50 payable by Krutyansky to Granato is listed on the notice of appeal, no relevant argument is made in Krutyansky's brief. Therefore, we will leave the award undisturbed. The counsel fees related to the court's ruling that Granato incurred fees in order to enforce a prior restraint issued against Krutyansky.

A-2777-20

POINT I

EVEN ASSUMING ARGUENDO THAT NEITHER PARTY BREACHED THE 2018 SETTLEMENT, DEFENDANT'S 33.4% RIGHT TO NJADMC SALE PROCEEDS IS NOT AFFECTED.

POINT II

IN DENYING THE DEFENDANT'S COUNTERCLAIM FOR CONVERSION, THE LOWER COURT REASONED THAT IT WAS REJECTING AN ATTEMPT TO CONVERT A BREACH OF CONTRACT CLAIM INTO A CONVERSION CLAIM, HOWEVER THE LOWER COURT ERRED IN NOT ADDRESSING PLAINTIFF'S CONVERSION OF KRUT[Y]ANSKY'S SHARES IN NJAMDC.

POINT III

THE LOWER COURT[] ERRED IN DISMISSING DEFENDANTS' UNJUST ENRICHMENT COUNTERCLAIM WITHOUT ADDRESSING THAT PLAINTIFF GRANATO WAS UNJUSTLY ENRICHED BY "GIVING" DEFENDANT KRUT[Y]ANSKY'S NJAMDC SHARES TO HERSELF.

POINT IV

THE DEPARTMENT OF HEALTH DETERMINES LICENSING AND CANNOT DETERMINE OWNERSHIP OF KRUT[Y]ANSKY'S SHARE CERTIFICATES AND BY DOING SO DENIED KRUT[Y]ANSKY'S OWNERSHIP RIGHTS WHICH CONSTITUTES AN ILLEGAL TAKING UNDER THE US CONSTITUTION.

A-2777-20

POINT V

NEW JERSEY LAW IS AMBIGUOUS WITH THE DEFINITION OF "OWNERSHIP" AND WHETHER AN INDIVIDUAL CAN BE AN EQUITY OWNER OF A HEALTH CARE FACILITY WITHOUT OBTAINING AN OPERATOR'S LICENSE AND WITHOUT HOLDING AN ADMINISTRATIVE POSITION.

    A.     Ownership Requirements.

    B.     Administration of Adult Day Care Facility.

    C.     Administrator's Appointment & Responsibilities.

    D.     Ownership & Conviction.

POINT VI

WHEN MR. KRUT[Y]ANSKY'S SIGNIFICANT ROLE IN THE FACILITY'S GROWTH IS TAKEN INTO ACCOUNT, THE FACT THAT AN ASSISTANT ADMINISTRATIVE POSITION DOES NOT REQUIRE A LICENSE, AS WELL AS THE FACT THAT OUR CLIENT INVESTED HIS OWN MONEY INTO THE ESTABLISHMENT OF THE FACILITY ALL INDICATE THAT KRUT[Y]ANSKY IS ENTITLED TO HIS OWNERSHIP IN EQUITY OR OTHERWISE EVEN ASSUMING ARGUENDO HE LACKS AN OFFICIAL POSITION.

    A.     Scope of Administration, Definitions, and Administrative Positions.

    B.     Split Function in Administrative Capacities.

5

For the reasons stated by Judge DeLuca, these claims of error do not warrant much discussion in a written decision.  See R. 2:11-3(e)(1)(E).

We do wish to comment on Krutyansky's contention that there is some ambiguity in the regulatory scheme and that an individual can acquire an ownership interest in adult day care facilities in this state without completing licensure requirements such as background checks.  A license holder is defined as "the individual or entity that has legal ownership and responsibility for all operations and management of the [adult day care] facility."  N.J.A.C. 8:43F-1.2.  According to N.J.A.C. 8:43F-2.10, titled "Ownership," an adult day care license holder has "responsibility for the management, operation, and financial viability of the facility."  "No facility shall be owned or operated by any individual who does not receive clearance from the Criminal Background Investigation Unit . . . ."  N.J.A.C. 8:43F-2.11(b).

Proposed ownership changes must be reported to the Department of Health (DOH).  N.J.A.C. 8:43F-2.12(a).  "Prior to transferring ownership of a facility, the prospective new owner shall submit an application" to DOH.  N.J.A.C. 8:43F-2.12(b).  "The review of an application for a transfer of ownership shall include . . . clearance from the Department's Criminal Background Investigation Unit."  N.J.A.C. 8:43F-2.12(c).  "When a transfer of

6

ownership application has been reviewed and deemed acceptable, an approval letter from [DOH] shall be sent to the applicant along with licensure application forms." N.J.A.C. 8:43F-2.12(d). The final licensure application must be submitted to DOH after the transaction transferring ownership "has been completed[.]" See N.J.A.C. 8:43F-2.12(e).

We see no ambiguity in the regulatory scheme governing adult day care facilities. The regulations explicitly require prospective owners to obtain DOH approval before any transfer of ownership. Krutyansky never completed the process or submitted to a criminal background check, and thus failed to meet the requirements for ownership-licensure. See N.J.A.C. 8:43F-2.11(b). He was never approved, and therefore could not be an owner.

Additionally, for the first time on appeal, defendants contend that a regulatory taking of Krutyansky's ownership interest occurred. This argument is premised on the notion that the State cannot require licensure before ownership, and that Krutyansky owned shares in NJAMDC. Because he had no property interest, and the State can regulate the acquisition of an ownership interest, no taking occurred.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2777-20